## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| RONALD MCCARTHY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:22-CV-72 (LAG) |
| | : | |
| CITY OF CORDELE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants City of Cordele and Joshua Deriso's Motion to Dismiss (Doc. 4). For the reasons stated below, Defendants' Motion is **GRANTED**.

### FACTUAL BACKGROUND

This suit arises from Plaintiff's dismissal from his position as City Manager for the City of Cordele on January 4, 2022. (Doc. 1 ¶¶ 14, 28–29). Plaintiff Roland McCarthy, a white male, was hired as the Finance Director for the City of Cordele in June 2017.[1] (*Id.* ¶¶ 8–9). In January 2021, after the death of the City Manager in December of 2020, the City Commission unanimously approved Plaintiff to fill the position of City Manager. (*Id.* ¶¶ 13–14). According to the Complaint, during his tenure as Finance Director, Plaintiff "demonstrated exemplary service and expertise . . . including leading the City during a global pandemic," "overs[eeing] annual audits, set[ting] and overs[eeing] City budgets, manag[ing] all department heads, serv[ing] as a liaison between citizens and the City," and applying for and receiving a $10 million grant "for sewer upgrades," among other accomplishments. (*Id.* ¶¶ 15–16).

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint (Doc. 1) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

In August 2021, Defendant Joshua Deriso "announced his campaign for chair of the City Commission of Cordele." (*Id.* ¶ 17). Plaintiff alleges that, during Defendant Deriso's campaign for Chair of the City Commission, he "frequently addressed race as an underlying motive for his plans for Cordele, including desiring to see an entirely African American Commission . . . and replacing Caucasian employees with African Americans." (*Id.* ¶ 18). Plaintiff further alleges that Defendant Deriso reiterated his intention of replacing Plaintiff with a "person 'of color'" in a series of Facebook posts and live videos between December 3, 2020 and November 14, 2021. (*Id.* at 6–8). For example, on October 21, 2021, Defendant Deriso made a post on Facebook in which he promised to replace Plaintiff as City Manager. (*Id.* ¶ 19). Defendant Deriso was elected as Chair of the city Commission on November 30, 2021, following a runoff election. (*Id.* ¶ 25).

The City Commission renewed Plaintiff's contract on December 21, 2021—two weeks before Defendant Deriso assumed office. (*Id.* ¶ 24). Newly elected Commissioners, including Defendant Deriso, were sworn into office on January 4, 2022. (*Id.* ¶ 27). That day, the Commission held an executive session during which they voted to terminate Plaintiff's employment and hire Angela Henderson Redding as the new City Manager. (*Id.* ¶¶ 28–29). Redding is an African American female. (*Id.* ¶ 29). Plaintiff's contract was not paid out as contemplated in his employment agreement. (*Id.* ¶ 32).

The vote to replace Plaintiff was three to one. (*Id.* ¶ 30). The three Commissioners who voted to replace Plaintiff were African American, and the one Commissioner who voted to retain Plaintiff was white. (*Id.*). Defendant Deriso did not vote because, as the Chair of the Commission, he only votes in the event of a tie. (*Id.* ¶ 31). Prior to the January 4, 2021 meeting, Defendant Deriso and Commissioner Reeves informed Plaintiff that he was going to be replaced by an African American. (*Id.* ¶ 35). In response to Plaintiff's suggestion that "he may be willing to take a demotion back to the Finance Director position," Defendant Deriso and Commissioner Reeves "told [him] that it would not be possible because [Plaintiff] did not look like them." (*Id.* ¶ 36). Plaintiff, therefore, alleges that Defendant Deriso "orchestrated" Plaintiff's termination, which was motivated by race. (*Id.* ¶ 46).

## PROCEDURAL BACKGROUND

On March 23, 2022, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC). (*Id.* ¶ 37). The EEOC issued its right-to-sue letter on May 4, 2022. (*Id.* ¶ 38). On May 27, 2022, Plaintiff filed this Complaint alleging:

Count 1: Race discrimination in violation of Title VII 42 U.S.C. § 2000 *et seq.* against Defendant City of Cordele (*Id.* ¶¶ 39–48);

Count 2: Race discrimination in violation of 42 U.S.C. §§ 1981, 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against both Defendants (*Id.* ¶¶ 49–58);

Count 3: Breach of contract against Defendant City of Cordele (*Id.* ¶¶ 59–64); and

Count 4: Attorneys' fees and costs under O.C.G.A. § 13-6-11 against Defendant City of Cordele (*Id.* ¶¶ 65–69).

Plaintiff seeks compensatory and punitive damages, reinstatement to his former position with full back pay and other benefits and expenses, front pay, including loss of future benefits of medical insurance and retirement benefits if reinstatement is not feasible, pre- and post-judgment interest, special damages for all out-of-pocket costs and expenses, including reasonable attorneys' fees, and any "such additional relief as this Court deems necessary, appropriate, proper, or just." (*Id.* at 19).

On July 26, 2022, Defendants filed the instant Motion to Dismiss (Doc. 4) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed his Response on August 8, 2022 (Doc. 7)[2] and Defendants replied on August 22, 2022 (Doc. 9). Also on August 22, 2022, Defendants filed a Motion to Stay Discovery (Doc. 10), which the Court granted on September 26, 2022 (Doc. 12). The Motion to Dismiss is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

---

[2]    Plaintiff filed identical responses (Docs. 6, 7) on the same day. The Court will consider the later Response for the purposes of this Order.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the same liberal reading does not apply to legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citation omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79 (citation omitted). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## DISCUSSION

Defendants argue that Plaintiff's claims against them should be dismissed because (1) Plaintiff fails to allege facts that demonstrate a basis for liability against Defendant City of Cordele for race discrimination pursuant to Title VII and § 1983; (2) Plaintiff's §1983 claim against Defendant Deriso in his official capacity is "impermissibly duplicative of the § 1983 claim against [Defendant] City" of Cordele; (3) Defendant Deriso is entitled to qualified immunity for the § 1983 claim in his individual capacity because Plaintiff has failed to show that Defendant Deriso violated a clearly established right; (4) "[P]laintiff's December 21, 2021 employment contract is *ultra vires* under Georgia law and therefore unenforceable"; and (5) Plaintiff's "claim for attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 is derivative of his underlying breach-of-contract claim." (Doc. 4-1 at 4). In response, Plaintiff argues that Defendant Deriso's "series of openly racist political positions" indicated by his Facebook posts, "as well as his leadership role as chair" are "strong factual allegations" sufficient to justify the "reasonable inference" that Plaintiff

was discriminated against based on his race. (Doc. 7 at 4). Plaintiff also asserts that his claims are sufficiently pled. (*Id.* at 5).

## I.    Federal Law Claims

As discussed below, Plaintiff has failed to state a claim for race discrimination against the City of Cordele or Defendant Deriso.[3]

### A.  Race Discrimination Claims Against Defendant City of Cordele

Plaintiff sues the City of Cordele for race discrimination under Title VII, § 1981, § 1983, and the Equal Protection Clause of the Fourteenth Amendment. Courts employ the same analytical framework when reviewing race discrimination claims brought under these laws. *Kelley v. Howden*, No. 21-13573, 2022 WL 17259720, at *3 (11th Cir. Nov. 29, 2022) (citing *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) (other citation omitted); *see also Flowers v. Troup Cnty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 n.7 (11th Cir. 2015) ("Though [Plaintiff] br[ings] claims under the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. §§ 1981 and 1983 as well, their fates rise and fall with his Title VII claim." (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1324–25 & n.14 (11th Cir. 2011)). Plaintiff's claims fail because, as is the case with the official capacity claims against Defendant Deriso, Plaintiff does not allege that the "Commission

---

[3]        In his Response, Plaintiff states, "[i]n the alternative, should the Court require additional factual allegations, Plaintiff respectfully requests the opportunity [to] file an amended complaint." (Doc. 7 at 16). This sentence in the conclusion of Plaintiff's Response is an impermissible attempt to "sit idly by as he await[s] the district court's determination with respect to a Rule 12(b)(6) motion to dismiss," in the hopes that he will get "'two bites at the apple' on appeal." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 543 (11th Cir. 2002) (citations omitted). Moreover, "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 n.24 (11th Cir. 2006) ("[A] motion for leave to amend must attach the proposed amendment or set forth the substance thereof."). Plaintiff neither sets forth the substance of the proposed amendment nor attaches a copy of the proposed amended complaint. Because Plaintiff has failed to state, with particularity, the substance of the proposed amendment or attach an amended complaint, Plaintiff's Motion for Leave to Amend is **DENIED**. While it is not apparent that a more carefully drafted Complaint would survive dismissal, because Plaintiff has not had the opportunity to amend his Complaint to address the deficiencies, his federal claims will be dismissed without prejudice.

itself acted with an unconstitutional motive." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam).

Plaintiff alleges that Defendant Deriso "led, directed, and encouraged replacing McCarthy with an African American candidate and effectively terminating McCarthy." (Doc. 1 ¶ 31). While there are allegations that Defendant Deriso expressed an intent to replace Plaintiff with a person of color, Defendant Deriso did not take part in the vote that resulted in Plaintiff's termination. (*Id.* ¶¶ 19, 31). Plaintiff attempts to rely on a "cat's paw" theory, which "provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." (Doc. 7 at 8); *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). Although Defendant Deriso did not participate in the vote to terminate Plaintiff, "a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge." *Stimpson*, 186 F.3d at 1331 (citing *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988)). "When the biased recommender and the actual decisionmaker are not the same person," however, "a plaintiff may not benefit from the inference of causation that would arise from their common identity" and must instead prove "that the discriminatory animus behind the recommendation. . . was an actual cause of the other party's decision to terminate the employee." *Id.* (citing *Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998)). As discussed below, however, Plaintiff fails to allege facts that would support a claim against the City under a cat's paw theory or any other theory of municipal liability.

Plaintiff has failed to allege sufficient "evidence that could reasonably indicate that [Defendant Deriso's] alleged discriminatory animus influenced the [City Commission's] decision to terminate [him]." *Stimpson*, 186 F.3d at 1332. The only allegation in the Complaint that would impute racial animus to any commissioner other than Defendant Deriso is Plaintiff's allegation that, prior to the meeting at which Plaintiff was terminated, Commissioner Reeves, along with Commissioner Deriso, told Plaintiff that he was being replaced by an African American and that it was not possible to return to his previous

position because Plaintiff "did not look like them." (Doc. 1 ¶¶ 35–36). A single allegation that Commissioner Reeves acted with discriminatory intent is not sufficient to allege that the entire Commission rubberstamped the vote to terminate his employment.

Evidence that one of three commissioners who voted to terminate Plaintiff's employment had an improper motive[4] is not sufficient to "impute an unconstitutional motive to the Commission as a whole." *Matthews*, 294 F.3d at 1297. As the Eleventh Circuit stated in *Mason v. Village of El Portal*, "the alleged racially discriminatory motive of only one member of a three-member majority of a five-member counsel" cannot give rise to municipal liability. 240 F.3d 1337, 1339 (11th Cir. 2001). "The imposition of municipal liability requires a decision by a final policymaker, not a 'principal' one." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). Plaintiff simply has not alleged that the commission, as a whole, merely rubberstamped the alleged improper motives of Defendant Deriso or even Commissioner Reeves. There are no allegations which would support a finding that each commissioner failed to make an independent decision regarding Plaintiff's termination; and, "[w]here a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased [] employee" and is not subject to the cat's paw theory. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001) (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) (finding that biased employee did not manipulate the final decisionmaker); *Llampallas*, 163 F.3d at 1249 (finding that decisionmaker's employment decision was not causally related to a subordinate's discriminatory animus) (other citation omitted)).

The Eleventh Circuit dealt with an analogous situation in *Matthews*. 294 F.3d 1294. In that case, a jury found that one of three commissioners voting to terminate the plaintiff's employment had an improper motive. *Id.* at 1297. The plaintiff in that case argued that the

---

[4] The Court notes that the allegations in the Complaint are worded vaguely so that it is not clear whether Commissioner Reeves—who is not sued in his individual or official capacity—actually said anything objectionable or whether he was merely present during the alleged conversation. (*See* Doc. 1 ¶¶ 35–36). At this stage, the Court gives Plaintiff the benefit of construing the allegation as if Commissioner Reeves actually made the alleged statements.

commissioner with the improper motive had influenced the other commissioners who voted in favor of termination. *Id.* at 1296. The Eleventh Circuit held that a single commissioner "does not possess final policymaking authority by himself; that authority rests with the entire Board of Commissioners." *Id*. at 1297. The Court of Appeals further held that,

> [b]ecause policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an unconstitutional motive. An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.

*Id.*; *see also Mason*, 240 F.3d at 1339 (granting summary judgment to municipality where plaintiff had only shown evidence that one member of a three-member majority had voted to fire plaintiff for a discriminatory reason); *Church*, 30 F.3d at 1343 (concluding that comments of one city councilman suggesting an unconstitutional motive was insufficient to show that the city council had authorized an unconstitutional policy).

Moreover, as was the case in *Mason*, to the extent that Plaintiff is attempting to rely on a delegation theory, the allegations in the Complaint do not support such a claim. Again, as the Eleventh Circuit explained in *Matthews*, "[l]ocal government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the decision is not subject to review by the policymaking authority." 294 F.3d at 1297 (citing *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)). Here, there is no evidence that Defendant Deriso was given the authority to terminate Plaintiff; but, even if such facts were alleged, the final decision was made by the voting members of the Commission and was thus subject to review by the policymaking authority. "As such, [Defendant Deriso] never possessed final policymaking power himself; and the delegation doctrine does not apply." *Id.*

Likewise, the claim cannot be saved by a ratification theory. Municipal "liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority. The final policymaker, however, must ratify not only the decision

itself, but also the unconstitutional basis for it." *Id.* (first citing *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 998 (11th Cir. 1990); and then citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it*.'") (emphasis in original) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988))). Plaintiff has not identified, and the Court has not found, any caselaw that would support a finding that Defendant Deriso, as Chair of the Commission, was a subordinate public official. Even assuming that Defendant Deriso was considered to be a subordinate public official, while his statements were widely known and while Plaintiff alleges that the other commissioners were influenced by Defendant Deriso, the allegations in the Complaint are "not enough to show that [the other Commissioners] ratified the unlawful basis by also voting for [Plaintiff's termination]." *Id.* at 1298. As the Eleventh Circuit explained,

> Lawmakers' support for legislation can come from a variety of sources; one commissioner may support a particular piece of legislation for a blatantly unconstitutional reason, while another may support the same legislation for perfectly legitimate reasons. A well-intentioned lawmaker who votes for the legislation—even when he votes in the knowledge that others are voting for it for an unconstitutional reason and even when his unconstitutionally motivated colleague influences his vote—does not automatically ratify or endorse the unconstitutional motive.

*Id.* Thus, the allegations do not support a claim that the other Commissioners ratified Deriso's alleged unconstitutional decision to terminate Plaintiff. Plaintiff, therefore, has failed to state a claim of race discrimination against Defendant Deriso in his official capacity.

Furthermore, "a municipality may not be held liable for its employees' violations of § 1981 under a *respondeat superior* theory." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989). A local government may only "be held liable 'when execution of a government's *policy or custom* . . . inflicts the injury.'" *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

691 (1978) (emphasis added) (omission in original); *see also Templeton v. Bessemer Water Serv.*, 154 F. App'x 759, 765 (11th Cir. 2005) (per curiam) ("[G]overnment entities cannot be held liable under § 1983 on a theory of *respondeat superior*, but rather may be held liable only for the execution of a governmental policy or custom." (citing *Monell*, 436 U.S. at 694)). Municipal liability "may [also] arise with regards to an employment decision, such as termination, provided that the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Holmes v. City of Ft. Pierce, Fla.*, No. 20-13170, 2022 WL 247976, at *4 (11th Cir. Jan. 27, 2022) (per curiam) (quoting *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003)). Plaintiff has not alleged that his termination was the result of a governmental policy or custom. Nor has Plaintiff alleged facts that would support a claim under any theory of municipal liability. Accordingly, Plaintiff has failed to state a claim for race discrimination against the City of Cordele.

## B. Race Discrimination Claims Against Defendant Deriso

Plaintiff raises claims against Defendant Deriso, in his official and individual capacity, for race discrimination in violation of 42 U.S.C. §§ 1981, 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Doc. 1 ¶¶ 49–58). "Section 1981, like Title VII, prohibits discrimination on the basis of race." *Gilham v. Athens Land Tr., Inc.*, 510 F. Supp. 2d 1349, 1356 (M.D. Ga. 2007) (citation omitted). "Section 1981 requires a showing of 'purposeful discrimination,' and 'provides protection only on the basis of race.'" *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1352 (N.D. Ga. 2017) (first quoting *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); and then quoting *Rollins v. Ala. Cmty. Coll. Sys.*, 814 F. Supp. 2d 1250, 1259 n.1 (M.D. Ala. 2011)).

To the extent that Plaintiff is suing Defendant Deriso in his official capacity, the claims are treated as claims against the City of Cordele because "when an [official] is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015)

("[F]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." (citation omitted)). Local officials sued in their official capacities can "be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where [] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 659. "[O]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *Matthews*, 294 F.3d at 1297 (citing *Church*, 30 F.3d at 1342) (other citation omitted). As discussed in Section I.A. above, the Complaint does not contain sufficient allegations to support a claim based on municipal liability. Because the official capacity claims against Defendant Deriso are treated as claims against the City, they likewise fail.

Plaintiff's race discrimination claims against Defendant Deriso in his individual capacity also fail. To survive a motion to dismiss the §§ 1981, 1983, and Equal Protection race discrimination claims against Deriso in his individual capacity, Plaintiff must plead facts "sufficient to create an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (citation omitted), *abrogated by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019). Plaintiff can establish that inference by alleging facts showing that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class or was replaced by a person outside of his protected class." *Thompson v. Tyson Foods, Inc.*, 939 F. Supp. 2d 1356, 1364 (M.D. Ga. 2013) (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)). While Plaintiff arguably has alleged facts to create an inference of discrimination, he has not alleged facts sufficient to "support a reasonable expectation that discovery would reveal evidence that [Defendant Deriso] *acted* with racially-discriminatory animus." *Henley*, 267 F. Supp. 3d at 1352 (emphasis added) (quoting *Ford v. Strange*, 580 F. App'x 701, 713 (11th Cir. 2014) (per curiam)) (other citation omitted).

Plaintiff's claims against Defendant Deriso in his individual capacity fail because, despite his alleged stated intention, Defendant Deriso did not act in this case. According to the Complaint, Defendant Deriso did not participate in the vote to terminate Plaintiff. (Doc. 1 ¶ 31). Thus, while there are allegations that Defendant Deriso might have possessed and expressed an improper bias, he was not a participant in the alleged unlawful act—the vote to terminate Plaintiff's employment. *See Trotter v. Bd. of Trs. of Univ. of Ala.*, 91 F.3d 1449, 1457 (11th Cir. 1996) ("Because [Defendant] was not involved in the challenged decision, the [Plaintiff] cannot rely upon possible racial animus on [his] part."). Plaintiff, therefore, has failed to state a race discrimination claim against Defendant Deriso in his individual capacity.[5]

## II.    State Law Claims

In Counts III and IV, Plaintiff raises state law claims for breach of contract and attorney's fees and costs pursuant to O.C.G.A. § 13-6-11. (Doc. 1 ¶¶ 59–69). Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction to entertain state law claims so related to claims within the Court's original jurisdiction as to form part of the same case or controversy. Once a plaintiff's federal claims are dismissed, however, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant[s]." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. Although the "decision to exercise supplemental jurisdiction over pendent state claims rests within the discretion of the district court," the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims, when, as here, the federal claims have been dismissed prior to trial."

---

[5]    Because, Plaintiff has failed to state a claim against Defendant Deriso in his individual capacity, the Court does not address the qualified immunity argument.

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) (citations omitted).

The Court has considered the effect of dismissal on Plaintiff's ability to pursue his state law claims. 28 U.S.C. § 1367(d) tolls the statute of limitations on a plaintiff's state law claims while the plaintiff pursues them in federal court and for thirty days after they are dismissed "unless [s]tate law provides for a longer tolling period." The statutory "instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock." *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018). Thus, § 1367(d) tolled the statute of limitations on Plaintiff's state law claims while they were pending before the Court and until the date of this Order. Further, Georgia law provides a six-month grace period for refiling claims dismissed in state or federal court. *Id.* at 602 (citing O.C.G.A. § 9-2-61(a)). Plaintiff may therefore refile his state law claims in state court before Georgia's grace period expires if he wishes to do so. If Plaintiff's state law claims were timely when he filed this action, he may still prosecute them in state court. Accordingly, because Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claims.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED**. Plaintiff's claims are **DISMISSED without prejudice**.

**SO ORDERED**, this 29th day of March, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**